# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DIAGNOSTIC RESOURCE GROUP, L.L.C.

    Plaintiff

vs.

TOSHIBA AMERICA                        Case No.:L- 02-CV-3020
MEDICAL SYSTEMS, INC.
    Defendant

## AFFIDAVIT OF JEFFREY LOW

I am Jeffrey Low, a principal of the Plaintiff in this action, and a competent adult and if called to testify I would state from my personal knowledge as follows;

1. In the transaction that forms the underlying basis for this case, the Plaintiff, under my direction as President, sought to buy a Magnetic Resonance Imaging scanner from Toshiba;

2. The sale and installation of these devices takes several steps;

3. The Defendant has produced a document indicating that, on or about March 31, 1998, the equipment had been mechanically installed and power to the unit was connected, and this is true;

4. However, the unit still needed to be calibrated and personnel trained in order to properly operate the equipment, which was to

provide highly sophisticated and precise scans for the care of patients;

5. At the time that the power had been turned on, the equipment was in no way ready for patient care;

6. At the time that the equipment would be properly calibrated and was ready to provide diagnostic images for patients, then the buyer of the equipment would sign its acceptance of the equipment;

7. This has been the pattern and practice in the diagnostic imaging business, and is in accord with my experience as well;

8. Indeed, it can often take several weeks or longer for equipment to be fully calibrated and ready for patient care;

9. In this instance, for a period of several months, Toshiba still could not calibrate the equipment completely and properly, and additionally, certain screws could never be inserted as the equipment had not lined up properly;

10. At the time that I signed the acceptance of the equipment, I was promised by Toshiba that the equipment would be properly calibrated, and the acceptance occurred in November, 1998;

11. Even at that time the installation of the equipment was not complete but I had been promised that it would be carried out;

12. I and Toshiba had agreed that the warranty would start from that

time, e.g. from the time that the acceptance was signed;

13. Additionally, in the middle of June, 1999, I was contacted by Toshiba personnel who discussed offering an extended service plan on the equipment, but made no indication at all that the warranty had expired prior to that time, and did not even assert that the warranty would imminently expire;

14. Thus, if the warranty had in fact been due to expire on April 1, 1999, Toshiba would have made reference to that fact in offering an extended plan and would also have approached me prior to June, 1999;

15. However, this was not done;

16. Additionally, after April 1, 1999, and indeed throughout April-June, 1999, Toshiba continued to come out and to fix the scanner without charge under the warranty as it had prior to April 1, 1999;

17. It was only on July 5, 1999 that Toshiba asserted for the very first time that the warranty had expired;

18. On July 5, 1999, Kim Stehman got a call from Kent the service engineer that the alarm for the magnet had gone off but that he had been told by his supervisors that he would not be allowed to fix the equipment.

I DECLARE UNDER PENALTY OF PERJURY THAT THE ABOVE

INFORMATION IS TRUE AND ACCURATE BASED UPON MY PERSONAL KNOWLEDGE.

_____
JEFEREY LOW, AFFIANT